1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

9  HARRY M. REYNOLDS, et al.,      )        No. CV-F-05-874 REC/SMS
                                   )
10                                 )        ORDER GRANTING DEFENDANT
                                   )        ALLSTATES' MOTION TO DISMISS
11              Plaintiff,         )        AND DIRECTING PLAINTIFFS TO
                                   )        FILE FIRST AMENDED COMPLAINT
12         vs.                     )
                                   )
13                                 )
   ALLSTATE LIFE INSURANCE         )
14 COMPANY, et al.,                )
                                   )
15                                 )
                Defendant.         )
16                                 )
   _____)
17

        Defendant Allstate Insurance Company moves the court to

dismiss the Complaint filed by plaintiffs Harry M. Reynolds and

Rebecca J. Reynolds for failure to state a claim upon which

relief can be granted pursuant to Rule 12(b)(6), Federal Rules of

Civil Procedure.

        The Complaint alleges that a life insurance policy was

issued to Harry M. Reynolds on January 28, 1988 "in consideration

for the payment of premiums on a monthly basis."  The First Cause

of Action for breach of contract alleges in pertinent part:

1

12.   On or about March 12, 2003, Plaintiff Rebecca J. Reynolds received a telephone call from John Joseph Corr ..., a Life Agent for Allstate, stating that a payment of $1,322.80 was due on said policy in order to keep it in force.

13.   On or about March 24, 2003, Plaintiff Harry M. Reynolds paid the sum of $1,322.80 by check No. 2097 as demanded by Allstate by personal delivery to Corr ....

14.   On or about March 24, 203, Defendants Allstate and Does 1 through 100, inclusive, unconditionally accepted Plaintiff's payment.

15.   On or about April 18, 2003, Defendant Allstate cashed Plaintiff's check by depositing it in Allstate Bank Account No. 85069946.

16.   On or about June 11, 2003, Allstate cancelled the policy and refunded the sum of $1,322.80 to Plaintiff Harry M. Reynolds ....

17.   Plaintiff Harry M. Reynolds has duly performed each and every condition and obligation of the policy issued by Defendants required to be performed by Plaintiff.

18.   Defendants ... failed and refused to perform their obligations under the life insurance policy in that they canceled Plaintiff Harry M. Reynolds coverage by fraudulently claiming that the check had been accepted subject to conditions.

19.   As a direct and proximate result of the breach by Defendants ... of their contractual duties, Plaintiffs have been damaged in that the policy insuring the life of Plaintiff Harry M. Reynolds was terminated in violation of the terms of the insurance contract. ....

The Second Cause of Action is for fraud, re-alleges all preceding allegations and further alleges:

21.   On March 24, 2003 and prior to the time that Plaintiff Harry M. Reynolds paid the premium as demanded, Defendant Allstate, and

2

Does 1 through 100 ... by and through its agent, Corr, made false representations that the life insurance policy would continue in force if Plaintiff Harry M. Reynolds paid the sum of $1,322.80 to Defendant Allstate.  The false representations were made orally and in person to Plaintiff Rebecca J. Reynolds.

22.  At the time of making said false representation, Defendants ... knew those facts to be false and that they had no basis upon which to make such representations. Said false representation was made with the intent that Plaintiffs would rely upon the false representations and pay the premium demanded by Allstate, and Does 1 through 100 ....

23.  Plaintiffs justifiably and reasonably relied upon these false representations by Defendants ... and due to such reliance immediately paid the premium demanded to Allstate, and Does 1 through 100 ... Plaintiffs' reliance upon the representations by Defendants ... was justified in that Corr held himself out as an expert in insurance coverage and in particular as an expert with respect to the life insurance policy sold to Plaintiff Harry M. Reynolds, and because Plaintiff has no expertise in insurance coverage and had no knowledge as to the truth or falsity of the representation made by Corr.

24.  Had Plaintiff Harry M. Reynolds known of the untruthfulness of the representations of Defendants ..., he would not have paid the premium in reliance on continued coverage under the life insurance policy.  Thus, plaintiff was induced to and did pay the premium due to fraudulent representations by Corr, the agent of Allstate.

25.  As a result of the misrepresentations by Defendants ..., Plaintiff Harry M. Reynolds paid premiums on a life insurance policy which provided no benefit whatsoever to Plaintiff Harry M. Reynolds, or the beneficiary under the policy.

26.  Defendant's actions were willful and

3

malicious in that Defendants ... knew or
should have known that Plaintiff Harry M.
Reynolds would not have the coverage he
needed under the policy but made the
misrepresentations in conscious disregard of
the needs and financial security of
Plaintiffs, and thus, Defendants ... are
liable to pay punitive damages to Plaintiffs,
pursuant to CCP § 3294 ....

The Third Cause of Action is for breach of the implied covenant

of good faith and fair dealing.  After re-alleging the preceding

allegations, the Third Cause of Action alleges in pertinent part:

29.  Implicit in the duty of Defendants'
obligations was to act fairly and in good
faith with Plaintiffs, to make reasonable
coverage decisions, and not cancel a
policyholder's life insurance coverage after
receiving and accepting payment for the
premiums due under the policy, and by not
fraudulently claiming that the payment was
accepted subject to conditions.

30.  Defendants Allstate and Does 1 through
100 ... breached the duty to act fairly and
in good faith toward Plaintiff by:

A.  accepting payment and
depositing the payment into their business
account and returning the premium almost
three months later;

B.  making contrived and
false allegations regarding non-existent
conditions;

C.  canceling the life
insurance policy without a legal
justification;

D.  denying Plaintiffs the
coverage and benefits owing under the policy
without regard to the provisions of the
policy and the obligations imposed upon
Defendants.

E.  basing its decision on
coverage upon a desire to reduce its

4

potential liability and to avoid its
obligations to Plaintiffs under the policy;

F.  denying Plaintiff Harry M.
Reynolds coverage with the intention of
coercing Plaintiffs to forgo the benefits due
under the policy; and

G.  by not contacting
Plaintiff Harry M. Reynolds directly and
discussing their legal theory with him.

31.  As a direct and proximate result of
Defendants' breach, Plaintiffs have suffered
damages consisting of a loss of life
insurance coverage.  Additionally, Plaintiffs
will incur the attorney fees and costs
necessary to obtain the benefits and rights
to which it [sic] is entitled under the
policy but which Defendants refused and
failed to provide. ....

32.  As a further direct and proximate result
of Defendants' breach, Plaintiffs have
suffered and will continue to suffer,
emotional and mental distress ....

33.  In committing the alleged acts,
Defendants acted with oppression, fraud and
malice.  All of the alleged acts were
performed or ratified by Defendants'
managerial employees, who acted with certain
knowledge that Defendants' conduct would
cause Plaintiffs' harm.  Plaintiffs are
therefore entitled to recover punitive
damages ....

The Fourth Cause of Action is for declaratory relief.

A.  <u>Governing Standards</u>.

In ruling on a motion to dismiss under Rule 12(b)(6), all
allegations of material fact are taken as true and construed in
the light most favorable to the plaintiffs.  However, conclusory
allegations of law and unwarranted inferences are insufficient to
defeat a motion to dismiss for failure to state a claim.  <u>Epstein</u>

5

1   v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).  In

2   addition, "in apprising the sufficiency of the complaint we

3   follow ... the accepted rule that a complaint should not be

4   dismissed for failure to state a claim unless it appears beyond

5   doubt that the plaintiff can prove no set of facts in support of

6   his claim which would entitle him to relief." Conley v. Gibson,

7   355 U.S. 41, 45-46 (1957).

8       As a general rule, "a district court may not consider any

9   material beyond the pleadings in ruling on a Rule 12(b)(6)

10   motion." Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.), cert.

11   denied, 512 U.S. 1219 (1994), overruled on other grounds,

12   Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.

13   2002). Rule 12(b)(6) expressly provides that when:

14         matters outside the pleading are presented to
         and not excluded by the court, the motion
15         shall be treated as one for summary judgment
         and disposed of as provided in Rule 56, and
16         all parties shall be given reasonable
         opportunity to present all materials made
17         pertinent to such a motion by Rule 56.

18   However, there are two exceptions to the requirement that

19   consideration of extrinsic evidence converts a Rule 12(b)(6)

20   motion to a motion for summary judgment:

21         First, a court may consider 'material which
         is properly submitted as part of the
22         complaint' on a motion to dismiss without
         converting the motion to dismiss into a
23         motion for summary judgment ... If the
         documents are not physically attached to the
24         complaint, they may be considered if the
         documents' 'authenticity ... is not
25         questioned' and 'the plaintiff's complaint
         necessarily relies' on them ... Second, under
26         Fed.R.Evid. 201, a court may take judicial

1         notice of 'matters of public record.' ....

2   <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-689 (9th Cir.

3   2002).

4       In seeking dismissal of the Complaint, Allstate relies on

5   various provisions in the policy at issue.  Because the policy is

6   attached to the Complaint, the court refers to and relies on

7   these provisions without converting the motion to one for summary

8   judgment.

9       In plaintiffs' opposition to the motion to dismiss,

10  plaintiffs make factual assertions that are not included in the

11  allegations of the Complaint, <u>see discussion infra</u>, and also

12  submit as an exhibit to their opposition, a letter dated August

13  29, 1989 to Harry Reynolds from Mary Ellen Demos.  The court will

14  not consider this letter in resolving the motion to dismiss

15  because to do so will require converting the motion to one for

16  summary judgment because the letter and its contents are nowhere

17  referenced in the Complaint.

18      B.  <u>First Cause of Action for Breach of Contract</u>.

19      In moving to dismiss the First Cause of Action for breach of

20  contract, Allstate refers the court to various provisions of the

21  policy.  The policy date is January 28, 1988.  The policy

22  provides that "[b]enefits expire at the end of the policy year in

23  the year shown."  The application to the policy provides: "Only

24  an officer of Allstate may change the Application or waive a

25  right or requirement.  No agent may do this."  The policy itself

26  also provides: "Only our officers may change this contract or

7

1 waive a right or requirement.  No agent may do this."  The policy

2 further provides in pertinent part:

3        **Grace Period -** If you do not make the premium
         payment by its due date, we will allow a
4        grace period of 31 days.  This contract will
         be in force during the grace period.  If you
5        do not make your premium payment by the end
         of the grace period, this contract will stop
6        unless there is a paid-up benefit as defined
         in the section called CASH VALUES AND PAID UP
7        BENEFITS.

8        ...

9        **Reinstatement -** We may reinstate this
         contract up to 5 years past the due date of
10       the first payment not made by the end of the
         grace period.  You may not use this right if
11       you stopped this contract by asking us to pay
         you the cash value.  We will reinstate the
12       contract if you:

13            1.  Give us the proof we require
              that the insured is still insurable
14            ....

15    Allstate argues that plaintiff cannot prevail on the First

16 Cause of Action for breach of contract because the allegations of

17 the Complaint do not establish the required element of the

18 existence of a contract.  Allstate notes that the premium payment

19 at issue was not made by plaintiffs until after the 31 day grace

20 period set forth in the policy.  Therefore, Allstate argues, the

21 policy by its terms terminated and plaintiffs have not alleged

22 that they satisfied any of the conditions for reinstatement of

23 the policy.

24    In responding to this aspect of the motion to dismiss,

25 plaintiffs contend that "[c]learly, a contract existed" and that

26 there is a question "under the facts of this case [whether]

8

1  Allstate had a legal right to declare the Life Insurance Contract

2  terminated for non-payment of premium."  In so arguing,

3  plaintiffs rely on factual representations that are not made in

4  the Complaint:

5          In August, 1989, Allstate sought and received
           an authorization from Reynolds to make
6          automatic payment deductions from the bank
           account of Reynolds ... This authorization
7          was never withdrawn by Reynolds.

8          Allstate did not follow any consistent
           practice in making deductions from Reynolds
9          account.  Some months Allstate sent statement
           [sic] and some months they did not send a
10         statement.  Whenever Allstate sent
           statements, Reynolds paid the amount demanded
11         in the statement.  Reynolds did not pay any
           particular attention to whether or not a
12         statement was received because he knew
           Allstate had an alternative means of
13         obtaining payment, namely, by automatic
           withdrawal from his account.  Reynolds has no
14         record of having received statements in late
           2002 or early 2003, and this was not
15         inconsistent with the prior conduct of
           Allstate.
16
           The fact that no statements had been received
17         went unnoticed until on or about March, 2003.

18         The first time Reynolds realized that there
           was a problem was on or about March 24, 2003,
19         when a telephone call was received from John
           Corr, a Life Agent for Allstate ... Corr was
20         not the original agent who sold the policy to
           Reynolds but was a successor in interest to
21         the original agent.

22         Prior to this time, Reynolds did not receive
           any notice that payment was due, or
23         concerning the fact that the policy had or
           would lapse for nonpayment of premium.
24
           No demands for payment or delinquency notices
25         were received by Reynolds.

26  Plaintiffs then refer to the allegations in the Complaint that

9

1   Corr told them that it was necessary to pay the past due premium

2   to keep the policy in force, that Reynolds paid the past due

3   premium by check, which check was cashed by Allstate.  Plaintiffs

4   then contend:

5           At no time did Corr or Allstate state to
            Reynolds that the payment was being accepted
6           conditionally, or that it was necessary for
            Reynolds to comply with certain reinstatement
7           procedures prior to acceptance of the
            payment.

8
            After receiving payment, Allstate did not
9           communicate to Reynolds orally or in writing
            that there were any conditions or requirement
10          for further actions by Reynolds.

11       However, as noted, most of the facts asserted by plaintiffs

12  in their opposition are not alleged in the Complaint.  The

13  allegations of the Complaint, when compared to the terms of the

14  policy, establish that the policy was not in force at the time

15  plaintiffs paid the past due premium and, therefore, the

16  Complaint does not state a claim for breach of contract as

17  presently pleaded.

18

19       Plaintiffs further oppose this aspect of the motion to

20  dismiss by referring to the allegations in the Complaint that

21  Corr, an agent of Allstate, told them to make the premium payment

22  in order to keep the policy in force.  Plaintiffs refer the court

23  to various legal principals concerning the law of agency,

24  including cases in which the principal is estopped by the actions

25  of an agent, ratification of an agent's representations by

26  silence, etc.  Plaintiffs argue:

                                    10

1
2
3
4
5

        Here, there is clear and convincing evidence that Allstate took no actions to repudiate Corr's actions as soon as they learned of them.  From the beginning, Allstate knew that Corr has accepted payment from Reynolds to reinstate his policy and this was apparently acceptable to Allstate.  It was obviously Allstate that supplied Corr with the amount required for reinstatement.

6
7
8
9
10
11

        Instead of returning the check to Reynolds if it were not their intent to reinstate the policy, Allstate deposited the check into their bank account, an unequivocal acceptance of the payment and a ratification of Corr's actions.  Therefore, the actions and failure to act on the part of Allstate is totally inconsistent with their claims that Corr did not have the authority to accept the check from Reynolds.  It is also inconsistent with the law in this area.

12      However, the Complaint does not allege that Corr told

13 plaintiffs that payment of the past due premium would cause the

14 policy to be reinstated.  The Complaint alleges that Corr told

15 the plaintiffs to make the past due premium to keep the policy in

16 force.  Furthermore, plaintiffs' arguments concerning agency and

17 estoppel by acts of an agent ignores the policy's provision:

18 "Only our officers may change this contract or waive a right or

19 requirement.  No agent may do this."  Finally, acceptance by

20 Allstate of plaintiffs' check cannot of itself constitute

21 reinstatement under the terms of the policy because the policy's

22 provisions allow Allstate to reinstate a lapsed policy under the

23 conditions set forth in the policy.

24      Plaintiffs further argue that their failure to comply with

25 the conditions for reinstatement of the policy do not negate the

26 claim for breach of contract because Allstate did not inform

11

1  plaintiffs that there were any requirements for reinstatement of

2  the policy.  However, the conditions for reinstatement are set

3  forth in the policy itself.  Plaintiffs must be presumed to have

4  read the policy and been aware of its terms.

5      Consequently, the court dismisses the First Cause of Action.

6  However, dismissal of this cause of action is with leave to amend

7  given the representations made by plaintiffs in their opposition

8  to this motion to dismiss which were not alleged in the

9  Complaint.[1]

10      C.  <u>Second Cause of Action for Fraud</u>.

11      In moving to dismiss this cause of action, Allstate notes

12  that the elements of a claim for fraud are (1) Allstate made a

13  representation as to a past or existing fact; (2) such

14  representation was false when made; (3) Allstate knew that the

15  representation was false when made, or made it recklessly without

16  knowing whether it was true or false; (4) Allstate made the

17  representation with the intent to defraud plaintiffs; (5)

18  plaintiffs were not aware of the falsity of the representation,

19  acted in reliance upon the truth of the representations, and were

20  justified in doing so; and (6) as a result of such reliance,

21  plaintiffs sustained legally cognizable damage.  <u>See</u> Judicial

22  Council "Official Form Cause of Action for Fraud".   Allstate

23  contends that the allegations of the Complaint demonstrate that

24

_____

25      [1]In granting leave to amend, the court is expressing no
   opinion whether those representations will suffice to state a claim
26  upon which relief can be granted.

plaintiffs cannot state a claim for fraud:

> ... Plaintiffs knew that, pursuant to the terms of the Policy and the application, no agent could modify the terms of the Policy. Plaintiffs also knew that they had not complied with the requirements under the Policy for reinstatement, and that no Allstate officer had approved the reinstatement.  Even assuming that Corr represented to Plaintiffs that their Policy would remain in force, Corr's statement is not a representation as to a past or existing fact; it is a representation as to a future fact.  Further, Plaintiffs cannot show that they justifiably relied on such statement because they had knowledge of the requirements under the Policy to make timely premium payments, that Allstate needed to approve reinstatement, and that they had not met the Policy requirements for reinstatement.

Plaintiffs oppose this aspect of the motion to dismiss by contending that there is a "difference between an allegation and proof" and that the "allegations are sufficient to support a fraud count".

However, the court agrees with Allstate's contentions that the allegations of the Complaint do not support a cause of action for fraud.

Consequently, the Second Cause of Action is dismissed with leave to amend.[2]

D.  Third Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing.

---

[2]If plaintiffs attempt to amend their cause of action for fraud, plaintiffs are advised that they must comply with the specificity requirement of Rule 9(b), Federal Rules of Civil Procedure.

1        Allstate moves the court to dismiss this cause of action on

2    the ground that, because the allegations of the Complaint

3    demonstrate that no contract between the parties existed at the

4    time plaintiffs paid the past due premium, plaintiffs cannot

5    state a claim for breach of the implied covenant.  <u>See discussion</u>

6    <u>supra</u>.  Allstate argues that the allegations of the Complaint

7    demonstrate that plaintiffs' failure to make the premium payment

8    within the grace period caused the policy to lapse by its terms

9    before plaintiffs made the past due premium payment.

10   Furthermore, Allstate notes, "[i]t is now settled law in

11   California that an insurer denying or delaying the payment of

12   policy benefits due to the existence of a genuine dispute as to

13   the existence of coverage liability or the amount of the

14   insured's coverage claim is not liable in bad faith even though

15   it might be liable for breach of contract."  <u>Chateau Chamberay</u>

16   <u>Homeowners Association v. Associated International Insurance</u>

17   <u>Company</u>, 90 Cal.App.4th 335, 347 (2001).

18        Plaintiffs oppose this aspect of the motion to dismiss,

19   arguing that Allstate intended to terminate the policy in order

20   to save money for Allstate and that Allstate acted in bad faith

21   because Allstate took no steps to "communicate to Reynolds if

22   there was a procedure required to reinstate" the policy:

23            Allstate knew that Reynolds would be without
              coverage if they terminated the insurance
24            contract, however, this apparently did not
              matter to Allstate.  Since Allstate made no
25            effort whatsoever to communicate with
              Reynolds regarding his policy including the
26            need for, or the procedure for reinstatement,

                               14

> this would appear to be a conscious disregard of their contractual duties of good faith and fair dealing.
>
> Allstate made no effort whatsoever to communicate with Reynolds in any fashion including the fact that his policy was going to lapse.

However, as alleged in the Complaint, the policy had already lapsed by its terms when plaintiffs made the past due premium payment. The policy provides that a lapsed policy may be reinstated if the conditions for reinstatement are satisfied. There is no allegation in the Complaint that plaintiffs made any effort to satisfy the conditions for reinstatement. Plaintiffs' complaint that Allstate did not communicate with them before the policy lapsed is not a breach of the implied covenant because plaintiffs must be presumed to know the terms of the policy.

Consequently, the Third Cause of Action is dismissed with leave to amend.

D.    <u>Fourth Cause of Action for Declaratory Relief</u>.

Allstate moves to dismiss this cause of action on the ground that the allegations of the Complaint demonstrate that there is no genuine dispute between the parties as to the existence of a contract between the parties.

Given the present allegations of the Complaint and the terms of the policy, Allstate is entitled to dismissal of this cause of action.

ACCORDINGLY:

1.    Defendant Allstate Life Insurance Company's motion to

15

1  dismiss is granted.

2      2.  Plaintiffs shall file a First Amended Complaint within

3  30 days of the filing date of this Order.

4  IT IS SO ORDERED.

5  668554**Dated:  August 29, 2005**        **/s/ Robert E. Coyle**
                                        UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26